| | | |
|---|---|---|
| CHRISTOPHER BUTLER and<br>TONYETT BUTLER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| U.S. BANK, N.A., DAVID TYNDALL,<br>NATIONAL DEFAULT SERVICING<br>CORPORATION, DAVID A. SIMPSON, P.C.,<br>ROGERS TOWNSHEND & THOMAS, P.C.<br>f/k/a KELLAM & PETTIT, P.A. and<br>LISA ROGERS | )<br>)<br>)<br>)<br>)<br>) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |

## COMPLAINT

COMES NOW, Plaintiffs, Christopher and Tonyett Butler, husband and wife, by and through their attorneys, Lucas & Nowak, LLP, and complain of Defendants and allege the following:

## PARTIES

1. Plaintiffs are adult residents of North Carolina whose address is 5804 Waterford Landing Court, Raleigh, North Carolina 27610.

2. Defendant U.S. Bank, N.A. ("U.S. Bank"), is a banking corporation, a "debt collector" as defined by 15 U.S.C. § 1692 et seq. and claimed holder in due course of the Adjustable Rate Note at issue in this case, and has a principal place of business at 425 Walnut Street, Cincinnati, Ohio 45202.

3. Defendant David Tyndall was an Assistant Vice President, Secretary and/or Treasurer of

National Mortgage Access, Inc., a now-dissolved mortgage brokerage firm that operated as original "lender" under Plaintiffs' Adjustable Rate Note and Deed of Trust, and has his principal place of business at Mortgage Choice Inc., 3731 Cary Parkway NW, Suite 203, Cary, NC 27513.

4. Defendant National Default Servicing Corporation is a "debt collector" as defined by 15 U.S.C. § 1692 et seq., and is an Arizona Corporation and the alleged Agent and Attorney-in-Fact for Defendant U.S. Bank, and has its principal place of business at 7720 N. 16th Street, Suite 300, Phoenix, Arizona 85020.

5. Defendant David A. Simpson, P.C., is a Charlotte Law Firm, a "debt collector" as defined by 15 U.S.C. § 1692 et seq. and alleged Substitute Trustee under Plaintiffs' Deed of Trust, and has a principal place of business at 6047 Tyvola Glen Circle, Charlotte, North Carolina 28217.

6. Defendant Rogers Townshend & Thomas, P.C. f/k/a Kellam & Pettit, P.A., is a North Carolina Law Firm, a "debt collector" as defined by 15 U.S.C. § 1692 et seq. and one-time Substitute Trustee under Plaintiffs' Deed of Trust, and has its principal place of business at 2550 West Tyvola Road Suite 520. Charlotte, North Carolina 28217.

7. Defendant Lisa Rogers is an individual employed by National Default Servicing Corporation, and a "debt collector" as defined by 15 U.S.C. § 1692 et seq.,

8. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

9. At all relevant times, each Defendant committed acts, caused or directed others to

commit the acts, or permitted others to commit the acts alleged in this Complaint; additionally, some of the Defendants acted as the agent for other Defendants, and all of the Defendants acted within the scope of their agency as if acting as the agent of another.

10. Knowing or realizing that other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts.

11. Each Defendant intended to and did encourage, facilitate or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

12. All Defendants engaged in continuous and multiple unfair and deceptive trade practices, fraud and misrepresentations that affected interstate commerce and proximately caused the herein injuries to the Plaintiffs.

13. All Defendants have conducted business in this State by filing fabricated, illegal and unenforceable transfers of Deeds of Trust, Promissory Notes, Assignments of Promissory Notes, Appointments of Substitute Trustees, Affidavits as to loan ownership of Plaintiffs' Note and Deed of Trust, Status of Accounts, Mortgages and Assignments of Mortgages and/or other court documents.

14. At all relevant times, each defendant knew or should have known that the other defendants were engaging in or planned to engage in the violations of law alleged in this Complaint.

## JURISDICTION AND VENUE

15. All preceding paragraphs are incorporated as though fully set forth.

16. The Court has original and subject matter jurisdiction under 28 U.S.C. 1331; 15 USC

1692 et seq., and over the statutory and common law violations of North Carolina law.

17. Venue is proper in this Judicial District as the Plaintiffs' property is located in Wake County, North Carolina, and Defendants have at all times conducted business in Wake County, North Carolina.

## FACTUAL ALLEGATIONS

18. All preceding paragraphs are incorporated as though fully set forth.

19. This case arises from a massive fraud perpetrated by Defendants that has resulted in damages to Plaintiffs.

20. On November 9, 2001, Defendant U.S. Bank purportedly executed a Limited Power of Attorney naming Olivia A. Todd, President and/or Lisa Rogers, of National Default Servicing Corporation as Agent and Attorney-in-fact for U.S. Bank,

21. The Limited Power of Attorney (hereinafter referred to as "POA") was signed by Mark Rudisill, Mortgage Documentation Officer, notarized, but undated, by Kimberly Stewart, Notary Public, Kentucky, recorded on February 6, 2003 at Wake County Register of Deeds; a copy of the Document is attached hereto and incorporated herein and marked **Exhibit "A"**.

22. This purported POA was not accompanied by a corporate resolution granting Mark Rudisill any authority to execute the same on behalf of U.S. Bank.

23. Upon information and belief, Mark Rudisill, Mortgage Documentation Officer, lacked the legal authority to execute said undated Limited Power of Attorney and such POA was ineffective to grant Defendant National Default Servicing Corporation any rights whatsoever.

24. On October 24, 2003, Plaintiffs executed an adjustable rate note (hereinafter referred to

as the "Note") of $149,441 at 4.500% annual interest for monthly installments of $757.20 on their home located at 4804 Waterford Landing Court, Raleigh, North Carolina with National Mortgage Access, Inc. identified as "Lender."; a copy of the Note is attached hereto and incorporated herein and marked **Exhibit "B"**.

25. As security for the aforementioned Note, on October 24, 2003, Plaintiffs executed a Deed of Trust (hereinafter referred to as the "Deed of Trust") identifying National Mortgage Access, Inc. as "Lender," and Kilpatrick/Gudeman as Trustee; a copy of the Deed of Trust is attached hereto and incorporated herein and marked **Exhibit "C"**.

26. A purported undated and unattached "Allonge" to the above-referenced Note was at some unknown point produced claiming that the debt under the Note was endorsed, without recourse, to Defendant U.S. Bank by David Tyndall, Assistant Vice President of National Mortgage Access, Inc.; a copy of the alleged Allonge is attached hereto and incorporated herein and marked **Exhibit "D"**.

27. Upon information and belief, this unattached and undated "Allonge" is fraudulent and does not operate to effectively transfer any rights of any kind to Defendant U.S. Bank.

28. The "Allonge" is not accompanied by a corporate resolution giving the purported signators the authority to execute such document.

29. On October 24, 2003 Defendant National Mortgage Access, Inc. purportedly assigned all beneficial interest in the Deed of Trust to Defendant U.S. Bank via an assignment purportedly signed by David Tyndall, Assistant Vice President, and Eleanor Warren Thorne, Secretary/Treasurer before Lori A. Sherrod, Public Notary for North Carolina; a copy of the Assignment is attached hereto and incorporated herein and marked **Exhibit "E"**.

30. The "Assignment" is not accompanied by a corporate resolution giving the signators the authority to execute such document.

31. Upon information and belief, this "assignment" is fraudulent and does not operate to effectively transfer any rights of any kind to Defendant U.S. Bank.

32. The signatures of David Tyndall upon the "Allonge" and the "Assignment" clearly do not match and are obvious forgeries.

33. The names on the aforementioned Assignment were clearly stamped on the document as Ms. Thorne's signature is placed on both the appropriate line and also identically placed on the Notary line (subsequently and incompletely 'whited out');

34. At the top of the "assignment," Kilpatrick Gudeman falsely certified this document to be a copy of the original document.

35. On October 30, 2003, a document titled "NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS" was signed by National Mortgage Access, Inc ("PRESENT SERVICER") and U.S. Bank ("FUTURE SERVICER"), confusingly informing Plaintiffs that the servicing of their mortgage loan was "assigned, sold or transferred from National Mortgage Access, Inc. to National Mortgage Access, Inc., effective DATE OF CLOSING," and that National Mortgage Access, Inc. was both the "present servicer" and "new servicer;" a copy of the Notice is attached hereto and incorporated herein and marked **Exhibit "F"**.

36. Shortly after the above Notice was issued, U.S. Bank sent a letter to Plaintiffs informing them that the servicing of their mortgage loan had been assigned from National Mortgage Access to U.S. Bank, effective December 1, 2003; a copy of this second Notice is attached hereto and incorporated herein and marked **Exhibit "G"**.

37. The purported Allonge executed by National Mortgage Access Inc., in addition to being fraudulent in nature and not attached to the original Note, states "Without Recourse. Pay To The Order Of: US Bank N.A."

38. This instrument is an order instrument and not a bearer instrument and does not convey the instrument to U.S. Bank, who, pursuant to an Affidavit of Indebtedness recorded January 15, 2009, asserts to be the holder of the Note.

39. The last known true holder in due course of the Note was National Mortgage Access Inc., who, according to records of the North Carolina Secretary Of State, was dissolved on November 24, 2008 and no longer exists.

40. Page 7 paragraph 20 of the Deed of Trust under "Substitute Trustee" clearly states that only the **Lender** may appoint successor trustees via an instrument recorded in the County in which the Security Instrument is Recorded.

41. The Lender as defined on page 1 of the Deed of Trust is National Mortgage Access.

42. Paragraph 20 does not state that successors, assigns, or nominees, or attorney-in-fact may appoint a Successor Trustee.

43. The Substitution of Trustee is invalid as it was executed by Lisa Rogers of National Default Servicing who is not the Lender nor a party in interest.

44. North Carolina General Statutes § 20-112 states: "Making false affidavit, perjury- Any person who shall knowingly make any false affidavit or shall knowingly swear or affirm falsely to any matter or thing required by the terms of this Article to be sworn or affirmed to shall be guilty of a Class I felony."

45. North Carolina General Statutes 10 -20(5) states "Powers and limitations; The notary is a signer of, party to, or beneficiary of the record, that is to be notarized. However, a disqualification under this subdivision shall not apply to a notary who is named in a record solely as the trustee in a deed of trust, the drafter of the record, the person to

whom a registered document should be mailed or sent after recording, or the attorney for a party to the record, *so long as the notary is not also a party to the record individually or in some other representative or fiduciary capacity.*"  (italics added)

46. The notary page to the Affidavit Of Indebtedness was allegedly acknowledged by Ellanor L. Zuccaro in Maricopa County AZ.

47. The notary page for the Substitution of Trustee was acknowledged by notary Pamela Cardy also in Maricopa County AZ.

48. Both of these exhibits acknowledged the signature of Lisa Rogers of National Default Servicing Corporation as Attorney-In-Fact for U.S. Bank NA.

49. The Arizona Secretary Of State records reflect that both Ellanor L. Zuccaro and Pamela Cardy are employees of National Default Servicing Corporation.

50. As employees of National Default Servicing Corporation who is executing and recording the instruments, the notaries are not a party of neutrality but rather a party to the instrument and beneficiary of the action.

51. An Affidavit of Indebtedness was allegedly executed by Lisa Rogers of National Default Servicing as Attorney-In-Fact for U.S. Bank NA.

52. After purportedly first being duly sworn by the notary-employee of NDS, Ellanor Zuccaro, the Affiant states "This affidavit is based on the personal knowledge of Affiant who is familiar with the books and records of U.S. Bank, N.A.

53. The Affiant further states that U.S. Bank is the holder of that certain Promissory Note and Deed of Trust."

54. U.S. Bank maintains their books and records in Owensboro, Kentucky and Lisa Rogers is in Phoenix Arizona.

55. Unless Lisa Rogers traveled to Owensboro, Kentucky and personally inspected the Note

and Deed of Trust it is impossible that she can swear under oath that U.S. Bank is the holder.

56. Lisa Rogers made a sworn Affidavit based solely on hearsay and the Affidavit appears to be a derivative of a template executed as a formality to foreclosure by a robo-signing entity that swears under oath and yet has no knowledge of facts.

57. This assignment was ineffective and a legal impossibility since almost two months earlier, Defendant Mortgage Access allegedly executed an "Allonge" to U.S. Bank and an "Assignment" to U.S. Bank.

58. On September 25, 2008, Kellam & Pettit, P.A., in order to make compensation, and failing to conduct the required due diligence, fraudulently drafted an appointment of substitute trustee on behalf of U.S. Bank, the fraudulent Owner and Holder of the Note secured by said Deed of Trust.

59. The "appointment" purportedly removed all prior trustees/substitute trustees and named Kellam & Pettit as Substitute Trustee under said Deed of Trust; signed September 25, 2008, Lisa Rogers of National Default Servicing Corporation, before Pamela Cardy, Notary Public – Arizona; a copy of the Substitution is attached hereto and incorporated herein and marked **Exhibit "H"**.

60. U.S. Bank, Lisa Rogers or National Default Servicing Corporation was never the holder in due course of the Note and therefore had no rights whatsoever to engage in the appointment of a substitute trustee.

61. On December 9, 2008 Kellam and Pettit filed in the Wake County General Court of Justice an Amended Notice of Hearing on Foreclosure of Deed of Trust, notifying Plaintiffs of a January 15, 2009 hearing to be held with respect to the foreclosure of

Plaintiffs' property; a copy of the Amended Notice is attached hereto and incorporated herein and marked **Exhibit "I"**.

62. On January 2, 2009, Lisa Rogers of Defendant National Default Servicing Corporation, as a purported Attorney-in-Fact for Defendant U.S. Bank, signed an Affidavit of Indebtedness claiming that based on her personal knowledge, Defendant U.S. Bank is the holder of Plaintiffs' Note and Deed of Trust, that Plaintiffs were in default, that U.S. Bank has declared all debts immediately due and payable, that the loan in issue is not subprime, and that U.S. Bank has instructed the Substitute Trustee to conduct foreclosure proceedings under the terms of the Deed of Trust; a copy of the Affidavit is attached hereto and incorporated herein and marked **Exhibit "J"**.

63. The Affidavit of Indebtedness was fraudulently signed by Lisa Rogers in that she had no personal knowledge that U.S. Bank was the holder in due course of the Note and, in fact, since she claimed to be familiar with the books and records of U.S. Bank, Rogers knew or should have known that U.S. Bank was not the Holder in Due Course of the Note.

64. On January 15, 2009, a foreclosure hearing was held at the Wake County General Court of Justice without the participation of Plaintiffs, despite Plaintiffs being present and timely for the hearing (his name was never called; the clerk told him he could ask for a continuance; his name is on the sign-in log).

65. On January 15, 2009 Kellam & Pettit, P.A. filed a Notice of Substitute Trustee's Foreclosure Sale of Real Property in Wake County Superior Court detailing a foreclosure sale on Plaintiffs' property to be held on February 12 (later amended to February 26) 2009; a copy of the Notice is attached hereto and incorporated herein and marked **Exhibit "K"**.

66. On January 15, 2009 an Order was signed by the Assistant Clerk of the Superior Court finding, among other things, that U.S. Bank is the holder of the Note and Deed of Trust sought to be foreclosed, default on the Note, power of sale under the Deed of Trust, and authorization of Substitute Trustee to proceed with foreclosure; a copy of the Order is attached hereto and incorporated herein and marked **Exhibit "L"**.

67. In February 2009, Plaintiffs sought to mitigate their financial inability to maintain their mortgage payments by exploring modification options with the help of American Loss Mitigation Agency of Raleigh.

68. On Thursday February 26, 2009, Plaintiffs' property was sold at Wake County Courthouse to U.S. Bank c/o Kellam & Pettit, P.A. for $156,393.52; a copy of the Report is attached hereto and incorporated herein and marked **Exhibit "M"**.

69. On March 29, 2009 Kellam & Pettit, P.A. filed in the Wake County General Court of Justice a Motion and Order to set aside a February 26, 2009 Report of Foreclosure Sale due to Plaintiffs' filing of a bankruptcy petition on March 6, 2009, allowing substitute trustee to conduct a new foreclosure sale upon entry of an Order in the Bankruptcy Court and dismissing the debtor from Bankruptcy or granting relief of the Automatic Stay; a copy of the Motion and Order is attached hereto and incorporated herein and marked **Exhibit "N"**.

70. On April 21, 2009 the United States Bankruptcy Court for the Eastern District of North Carolina issued an Order of Dismissal. A copy of the Order is attached hereto and incorporated herein and marked **Exhibit "O"**.

71. On May 12, 2009, Defendant David A. Simpson, P.C. ("David A. Simpson"), acting as a purported Substitute Trustee, but without such authorization, filed a Motion and Order to

reopen the Special Proceeding for concluding foreclosure; a copy of the Motion and Order is attached hereto and incorporated herein and marked **Exhibit "P"**.

72. On May 13, 2009, Defendant David A. Simpson, P.C., again without authorization to act as Substitute Trustee, filed an Amended Notice of Substitute Trustee's Foreclosure Sale of Real Property stating that the property at issue in this action will be placed for sale at public auction on June 4, 2009; a copy of the Amended Notice is attached hereto and incorporated herein and marked **Exhibit "Q"**.

73. On June 8, 2009, Defendant David A. Simpson, P.C., again without authorization to act as Substitute Trustee, filed a Notice of Bankruptcy in the Wake County General Court of Justice declaring the above-mentioned foreclosure proceeding suspended due to Plaintiffs' filing for bankruptcy; a copy of the Notice is attached hereto and incorporated herein and marked **Exhibit "R"**.

74. On April 13, 2010, Defendant Rogers Townsend & Thomas filed with the Wake County Register of Deeds a Substitution of Trustee on behalf of National Default Servicing Corporation, a purported Attorney-in-Fact for U.S. Bank, removing Kilpatrick Gudeman and any other trustee/substitute trustee on the Deed of Trust, and naming David A. Simpson as successor trustee; a copy of the Substitution is attached hereto and incorporated herein and marked **Exhibit "S"**.

75. On May 12, 2010, Defendant David A. Simpson filed an Amended Notice of Substitute Trustee's Foreclosure Sale of Real Property stating that the property at issue in this action will be placed for sale at public auction on June 3, 2010; a copy of the Amended Notice is attached hereto and incorporated herein and marked **Exhibit "T"**.

76. On June 3, 2010, Defendant David A. Simpson, P.C., as Mortgagee-Trustee/Attorney-

Agent for Defendant U.S. Bank, filed a Report of Foreclosure Sale/Resale with Wake County Superior Court, detailing U.S. Bank as the highest bidder on Plaintiffs' property with a bid amount of $169,827.71; a copy of the Report is attached hereto and incorporated herein and marked **Exhibit "U"**.

77. On June 17, 2010, Defendant David A. Simpson, P.C. filed a Notice of Bankruptcy in the Wake County General Court of Justice declaring the above-mentioned foreclosure proceeding suspended due to Plaintiffs' filing for bankruptcy; a copy of the Notice is attached hereto and incorporated herein and marked **Exhibit "V"**.

78. On August 13, 2010, National Mortgage Access Corporation was administratively dissolved by the Department of the Secretary of State of North Carolina for failure to file an annual report; a copy of the Certificate of Dissolution is attached hereto and incorporated herein and marked **Exhibit "W"**.

79. On March 3, 2011, Defendant David A. Simpson, P.C., Substitute Trustee, filed an Amended Notice of Substitute Trustee's Foreclosure Sale of Real Property, detailing an April 21, 2011 sale date for Plaintiffs' property; a copy of the Amended Notice is attached hereto and incorporated herein and marked **Exhibit "X"**.

80. Although Plaintiffs had Noticed Removal to the State Court, on April 28, 2011, Defendant David A. Simpson, P.C., the alleged Substitute Trustee, improperly filed with the Wake County General Court of Justice a Notice of Postponement of Sale, rescheduling the April 21, 2011 sale date of Plaintiffs' property to June 30, 2011; a copy of the Notice is attached hereto and incorporated herein and marked **Exhibit "Y"**.

**COUNT I.**
VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA") 15 USC § 1692
Plaintiffs v. U.S. Bank, Lisa Rogers, David A. Simpson, National Default Corporation,

Kellam & Pettit and Rogers Townshend & Thomas, P.C.

81. All preceding paragraphs are incorporated as though fully set forth herein.

82. Defendants U.S. Bank, National Default Corporation, Kellam & Pettit and Rogers Townshend & Thomas, P.C., Lisa Rogers and David A. Simpson, P.C. are debt collectors as defined by 15 USC 1692(a)(6).

83. Plaintiffs are consumers as defined by 15 USC 1692(a)(3).

84. Defendants utilized and caused to be filed false, deceptive, misleading, and perjured affidavits in connection with the collections of debts in violation of 15 USC 1692(e).

85. The aforementioned Defendants also utilized and caused to be filed false, deceptive, misleading and perjured documents with the Clerk of Court for Wake County regarding the attempted foreclosure of Plaintiffs' home.

86. The Defendants have, on multiple occasions, notified numerous third parties that Plaintiffs owes a debt to them when in fact no valid debt was owed to the Defendants, all in violation of 15 USC 1692(b)(2).

87. Defendants, on multiple occasions, contacted third parties that Plaintiffs owed a debt to them when Plaintiffs in fact owed no lawful debt, all in violation of 15 USC 1692(b)(3).

88. Defendants communicated with third parties utilizing language that they were in the debt collection business concerning an unlawful debt purportedly owed by Plaintiffs in violation of 15 USC 1692(b)(2).

89. Defendants communicated with persons other than the consumer, their attorneys or a credit bureau concerning this unlawful debt in violation of 15 USC 1692(c)(b).

90. Defendants engaged in harassment and abuse by filing legal actions to collect on what they knew or should have known was an unlawful debt in violation of 15 USC 1692 d.

91. Defendants filed false, deceptive and misleading statements in connection with their efforts to collect this unlawful debt in violation of 15 USC 1692 e.

92. Defendants misrepresented the character and legal status of the unlawful debt in violation of 15 USC 1692(e)(2).

93. Defendants threatened to take and did take actions that they could not legally take without the ruse and falsities committed upon the Plaintiffs and the Clerk of Court in violation of 15 USC 1692(e)(5).

94. Defendants engaged in conduct that disgraced the Plaintiffs in violation of 15 USC 1692(e)(7).

95. Although Plaintiffs disputed the alleged debt, Defendants communicated false credit information to others and failed to communicate that the debt was disputed in violation of 15 USC 1692(e)(8).

96. Defendants stated numerous times that they were the lawful owners in interest of the debt or empowered to speak on behalf of the owner in interest, yet knew or should have known that they were not, and as such violated 15 USC 1692(e)(5).

97. All Defendants engaged in unfair and deceptive means and attempts to collect the alleged debt in violation of 15 USC 1692 (f).

98. Defendants attempted to collect the alleged debt in a manner and amount not authorized by the original DOT and Note in violation of 15 USC 1692(f)(1).

99. Defendants threatened to unlawfully repossess the Plaintiffs' property in violation of 15 USC 1692(f)(8).

100. Plaintiffs suffered actual damages from these violations.

101. Pursuant to 15 USC 1692(k), Plaintiffs are entitled to actual damages, statutory damages

as set forth herein, and reasonable attorney fees and costs.

102. Because the conduct of the Defendants was frequent and persistent and because the nature of the violations of the FDCPA were so egregious and because the FDCPA violations were a part of a deliberate scheme, Plaintiffs are entitled to the maximum possible relief permitted under 15 USC 1692k(a).

## COUNT II.
### VIOLATIONS OF RESPA 12U.S.C. 2601 ET SEQ.

103. All preceding paragraphs are incorporated as though fully set forth herein.

104. Defendants failed to timely inform Plaintiffs of any alleged Appointments, Assignments and transfers of the mortgage in violation RESPA.

105. Defendants failed to timely notify Plaintiffs of any change of servicers.

106. Plaintiffs have previously made written demands to Defendants U.S. Bank, National Default Corporation, Kellam & Pettit and Rogers Townshend & Thomas, P.C. to show evidence of standing to claim a debt and Defendants have refused to evidence such standing.

## COUNT III.
### VIOLATIONS OF TRUTH-IN-LENDING LAWS-REGULATION Z
### UNDERSTATED AMOUNT FINANCED
### Butlers v. David Tyndall and U.S. Bank

107. All preceding paragraphs are incorporated herein as though fully set forth.

108. The amount financed when deducted from the loan amount of $149,441 reveals that $2,663.76 is the finance charges used to calculate the Amount Financed. A copy of the Truth-in-Lending Disclosure issued by Defendant National Mortgage Access is attached and incorporated hereto and marked Exhibit "Z."

109. When recalculating the finance charges as disclosed on the Settlement Statement the

resulting total is $2,853.14. A copy of the Settlement Statement is attached and incorporated hereto and marked Exhibit "1."

110. 12 C.F.R. § 226.4 states "The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."

111. In a refinance loan, such as the subject loan herein, the lender engaged a third party service provider.

112. Pursuant to 12 C.F.R. § 226.4(a)(1) & (2), the cost of third party service providers such as escrow related costs, lender required recording fees, notary fees, title endorsements or any other services required by the lender are considered a "Finance Charge" if the lender requires the use of that service.

113. Because the lender did not include these charges, the adjusted "Amount Financed" is $146,587.46.

114. The Final Truth In Lending Statement understates the amount of Finance Charges by $189.38.

115. Pursuant to 12 C.F.R. § 226.23(g), finance charges may not be understated by more than $100.

116. The purpose of TILA (Truth In Lending Act 15 USC 1601 et seq.) is to promote the informed use of consumer credit by requiring disclosures about its terms, cost to standardize the manner in which costs associated with borrowing are calculated and disclosed.

117. TILA requires uniform or standardized disclosure of costs and charges so that consumers

can shop and compare.

118. Misleading or misrepresentation of those charges voids the consumer's ability to shop for comparable loan products that may be available through other lenders.

119. The Truth-In-Lending Disclosure (Exhibit Z) discloses an APR of 4.380%.

120. By deducting the Amount Financed of $146,587.86 from the Total of Payments as disclosed on exhibit 1, the resulting balance of $114,883.08 represents the Finance Charge and the basis by which the APR is recalculated.

121. When calculating the APR using the corrected figures, the actual APR is 5.0870%.

122. The disclosed APR is understated by .701% which exceeds the limit of 1/8 (.125%) pursuant to 15 USC 1606 (c).

123. A misleading disclosure is as much a violation of TILA as a failure to disclose at all.

124. Therefore, the borrowers have yet to receive a Truth In Lending Disclosure Statement.

125. Under 12 C.F.R. 226.23(a)(3), a failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission.

126. Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule.

127. Under the Note, the interest rate for the first 24 months is 4.50%.

128. In the second series of payments, the lender chose to forecast a lower interest rate of 4.00% thereby disclosing lower payments.

129. The Adjustable Rate Rider states that the interest rate will never be increased by more than 1%.

130. Instead of disclosing a worsened scenario by increasing the interest rate by at least one half of the adjustment cap, (.50%), the lender instead reduced the rate from 4.50% in the

first series of payments to 4.00% for the second series of payments.

131. This is a deceptive practice meant to mislead and deceive, and did mislead and deceive the Plaintiffs thereby influencing them to expect a lower payment after the first 24 months.

132. Since interest paid over the life of a loan represents a key factor in calculating the APR, the true APR is thereby disguised and resulted in the failure to disclose and hampered the Plaintiffs' ability to shop and compare prices.

133. The Truth-In-Lending Disclosure states "This is a variable rate loan. Disclosures were provided to you earlier." However, there is no evidence that the document titled "Adjustable Rate Program Disclosure" was ever provided to the Plaintiffs at any time either earlier or at the consummation of this loan.

134. The Final Truth In Lending Disclosure (Exhibit Z) disclosed a Prepayment Penalty but there was no required Pre-Payment Penalty Rider attached to the Deed Of Trust nor was there a Pre-Payment Agreement provided in the loan package which disclosed the terms of the pre-payment feature.

135. The Final Settlement Statement uncovers a Yield Spread Premium (YSP) of $1,534.58 paid by U.S. Bank to the Lender at closing.

136. There are no disclosures to the Plaintiffs that this compensation is actually a premium paid by the U.S. Bank to the Lender for selling a loan product whereby the interest rate is increased above the par rate thereby encumbering the Plaintiffs with a much higher interest rate over the life of the loan.

137. By rule of thumb, an increase in interest of .50% (1/2%) above the par rate would yield the broker a premium of approximately 1% of the loan amount.

138. Therefore, the par interest rate at the time this loan was originated would have been roughly 3.999%.

139. The payment would then have been $712.60 a month versus $818.10 the Plaintiffs were paying, making the loan much more affordable.

140. Furthermore, the Good Faith Estimate does not disclose a YSP thereby nullifying the Plaintiffs' ability to shop and compare for a better loan product. A copy of the Good Faith Estimate is attached hereto and incorporated herein and marked Exhibit 2.

141. The Plaintiffs were not provided an Estimated Settlement Statement (HUD-1 or HUD-1A) disclosing the costs and fees the borrowers could expect to pay at closing.

142. Failure to provide this disclosure undermines the ability to insure compliance with CFR §226.18 and CFR § 226.23 (i) which sets the limits of finance charge differentials and CFR § 226.19 which limits the APR differentials.

143. Failure to provide this disclosure at loan consummation constituted a failure to provide a Truth In Lending disclosure thereby causing harm to Plaintiffs.

### COUNT IV.
VIOLATION OF FDIC CONSUMER PROTECTION PARAGRAPH 19 (b) (2) (viii)

144. All preceding paragraphs are incorporated as though fully set forth herein.

145. 12 CFR Part 226 et seq. states in pertinent part "2. Selection of index values. The historical example must reflect the method by which index values are determined under the program. If a creditor uses an average of index values or any other index formula, the history given should reflect those values. The creditor should select one date or, when an average of single values is used as an index, one period and should base the example on index values measured as of that same date or period for each year shown in the history. A date or period at any time during the year may be selected, but the same date or period

must be used for each year in the historical example. For example, a creditor could use values for the first business day in July or for the first week ending in July for each of the 15 years shown in the example."

146. Pursuant to this section, the lender must provide the borrower with historical index values when the loan is an adjustable rate loan and adjustments are based on an index.

147. Plaintiffs' loan is an adjustable loan and is based upon an index.

148. Defendant failed to make such required disclosure to the Plaintiffs thereby causing harm to Plaintiffs.

## COUNT V.
### FRAUD AND MISREPRESENTATION
### DECEPTIVE AND UNFAIR TRADE PRACTICES
### N.C. G.S. §75-1 ET SEQ.

149. Plaintiff re-alleges and affirms each preceding paragraph of this Complaint and incorporates such as if alleged anew.

150. In 2010, Defendants intentionally instituted unlawful foreclosure against Plaintiff based upon fraudulent documents in the Wake County Court.

151. The deceptive acts of the Defendants and their employees and agents resulted in a multitude of misrepresentations, including but not limited to the true identity of the Lender, and the fraudulent misrepresentation as to the Mortgagee.

152. The Defendants induced the Plaintiffs to enter into the transaction when there existed in the inducement and execution material representations that were false and were known to be false or were made recklessly, which inducement was reasonably acted upon by Plaintiffs and acted upon in reliance thereon and Plaintiffs have suffered injury proximately due to such.

153. The scheme employed by Defendants intentionally had the capacity and tendency to

deceive Plaintiff, and did deceive Plaintiff and the Clerk of Court.

154. The acts of the Defendants violated standards of fair trade practices and affected commerce.

155. As a result of the Defendants' unfair and deceptive trade practices, Plaintiff was proximately injured in his business and his person.

156. This foreclosure has been continued with no date set for a hearing.

157. The deceptive acts of the Defendants constitute fraudulent misrepresentation and the Defendants are jointly and severally liable for their acts of fraud by their misrepresentation and all damages stemming from such, including punitive damages and attorney's fees.

## COUNT VI.
### NEGLIGENT SUPERVISION

158. Plaintiff re-alleges and affirms each preceding paragraph of this Complaint and incorporates such as if alleged anew.

159. Defendants had a duty of care to supervise the actions of their employees and agents

160. Defendant's employees and/or agents' actions, as alleged previously, were unlawful and violated Plaintiff's property rights.

161. Defendants knew or should have known that their employees and/or agents were acting unlawfully.

162. As a result of the Defendants' negligent supervision, Plaintiff was proximately injured by the unlawful acts of their employees and/or agents.

163. An agency relationship exists between the individual defendants and the corporate defendants.

164. The actions of the individual defendants were done on behalf of and at the direction of

the corporate defendants and within the scope of their agency relationship.

165. As a result of the actions of the individual defendants, the Plaintiff was injured.

## COUNT VII.
### COMMON LAW FRAUD AND INJURIOUS FALSEHOOD

166. Plaintiff incorporates by this reference each paragraph of this Complaint as if set forth fully herein.

167. The forged and publicly filed false mortgage assignments enabled all of the Defendants to perpetrate the fraudulent foreclosure and sale.

168. All of the Defendants knew or should have known the material representations were false.

169. The material representations to the Court and to the Plaintiff were made so that the Court and the Plaintiff would believe that the Defendants had a legitimate claim in the property. The Plaintiff and County Clerk relied on such and the Plaintiff was injured as a result with the entering of a judgment and the facing of foreclosure litigation.

## COUNT VIII.
### FRAUDULENT CONVEYANCE

170. Plaintiff incorporates by this reference each paragraph of this Complaint as if set forth fully herein.

171. The Defendants knowingly engaged in fraudulent conveyances.

172. The Plaintiffs were aggrieved by the transfer of mortgage of their real property and this action serves as a Petition in Equity against the Defendants.

173. All Defendants taking part in or who conspired with those who participated in the acts or practices in question are jointly and severally liable to the Plaintiff.

## COUNT IX.
### REFORMATION

174. Plaintiff incorporates by this reference each paragraph of this Complaint as if set forth fully herein.

175. Based on this Petition in Equity, the Plaintiffs are entitled to have clear title restored and the Court should Order the Clerk of the County to release the mortgage and strike all mortgage assignments filed in the name of the Defendants as to the Plaintiffs.

**COUNT X.**
SLANDER OF TITLE

176. Plaintiffs incorporates by this reference each preceding paragraph of this Complaint as if set forth fully herein.

177. The Defendants have knowingly and maliciously communicated, in writing, a false statement that has the effect of disparaging the plaintiffs' title to property. The Plaintiffs have incurred special damage as a result.

178. An employee or partner of Defendants drafted the Post-Foreclosure Mortgage Assignment. The Assignment was signed by an employee of the Defendants and the signature notarized by an employee, agent or partner of the Defendants.

179. US Bank has no legally enforceable claim, interest or standing to sue as to the Note or Mortgage in question and the claim is a cloud on the Defendants' title and should be quieted under North Carolina law.

180. Plaintiffs are the rightful owners of the subject property.

181. Plaintiffs are the legal titleholders of their property.

182. US Bank has knowingly and unlawfully caused a cloud to be recorded against the title of the Plaintiffs' property and have caused to be sent notices of default and foreclosures, and have served and filed mortgage documents that claim an interest in the property of the

Plaintiffs.

183. Any purported transfer of any interest in the Plaintiffs' real estate was wrongful and invalid because the mortgages, foreclosures or purported foreclosures were invalid and were not conducted in accordance with the laws of North Carolina.

184. US Bank knew or should have known that such transfers were wrongful and invalid and the publication of an ownership interest in the Plaintiffs' property is, therefore false.

185. The recording of the mortgages published the information to third parties.

186. As a result of said wrongful publication of an ownership interest in the Plaintiffs' property, Plaintiffs have incurred damages and will continue to incur attorneys' fees and costs related to this litigation, in an amount to be proven at trial.

187. Plaintiffs seek a declaratory judgment against Defendants stating that Defendants have violated Plaintiffs' rights and that the Defendants had and have no right to hold mortgages in the name of US Bank and/or foreclose on the Plaintiffs' property and that the Defendants are entitled to no further payments from the Plaintiffs or recognition in Plaintiffs' Title to his property.

188. The Plaintiff is entitled to a reformation of these notes as unsecured notes or as partially or wholly discharged notes and a right to reformation of the contracts with the persons or entities who are owed obligations because of funding of the loans of the Plaintiff

**TOLLING THE STATUTE OF LIMITATIONS**

189. Defendants fraudulently concealed their wrongdoings and prevented Plaintiffs from discovering their cause of action.

190. Plaintiffs have been injured by the fraud by Defendants and have remained in ignorance of it without any fault or want of diligence or care on their part.

191. Defendants made many misleading statements that the loan contained certain terms desirable to the consumer when it did not.

192. Defendants' use of deceit or trickery caused Plaintiffs to act to their disadvantage.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

1. Judgment against Defendants as Jointly and Severally Liable for all issues in excess of $1,000,000.00.

2. Costs and attorneys fees pursuant to 18 USC § 1964(c) and relevant North Carolina law;

3. Actual and statutory damages for violations of FDCPA pursuant to 15 USC § 1692(k) and relevant North Carolina law;

4. Costs and Attorneys Fees pursuant to 15 USC § 1692(k) and relevant North Carolina law;

5. Pre-Judgment and post judgment interest at the maximum rate allowable by law;

6. Compensatory damages;

7. Punitive damages as allowed by law;

8. Such other and further relief available under all applicable under state and federal laws and any relief the court deems just and appropriate;

/s/ Jeffrey Nowak
Jeffrey Nowak, Esquire
NC BAR # 40625
JEFNWK@COMCAST.NET
LUCAS & NOWAK, LLP
2631 E. GEER ST.
    DURHAM, NC 27704
    919-237-1934

/s/ H.E. Luke Lucas
H.E. Luke Lucas, Esquire
PA BAR # 61124

LUCASANDNOWAK@NC.RR.COM
*ATTORNEYS FOR PLAINTIFFS CHRISTOPHER AND TONYETT BUTLER*

DEMAND FOR JURY TRIAL pursuant to rule 38(a) of the F.R.C.P.
Plaintiff demands a jury trial as to all issues triable by a jury.

Respectfully submitted this day of August 11, 2011.

/s/ Jeffrey Nowak
Jeffrey Nowak, Esquire
NC BAR # 40625
JEFNWK@COMCAST.NET

/s/ H.E. Luke Lucas
H.E. Luke Lucas, Esquire
PA BAR # 61124

LUCASANDNOWAK@NC.RR.COM